## Case No. 4,550.

### In re EUREKA MANUF'G CO.
### In re INVENTORS' MANUF'G CO.

[1 Lowell, 500.] [1]

District Court, D. Massachusetts. 1870.

G. O. Shattuck, for the bank.

A. A. Ranney and N. Morse, for assignees of Felton.

LOWELL, District Judge. I cannot presume, as it is argued that I should, that the cashier's action was approved by the bank, and that these enormous advances were made as an ordinary debt from Felton to the bank. Special authority must be proved for the action of the cashier so far beyond the limits of his ordinary duty and authority. Upon the face of the transaction it was a fraud on the bank.

The question then is whether the bank can follow the moneys into the hands of the companies, or must be content with holding the debt against Felton. And this is substan-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

tially the same question as would arise in an action of assumpsit between the same parties, if they had all remained solvent. The right to maintain an action for money had and received does not always depend on privity of contract, or upon contract at all. It is often sustainable on the same evidence that would support trover if chattels and not money were in question: Neate v. Harding, 6 Exch. 349; Clarke v. Shee, Cowp. 200; Mason v. Waite, 17 Mass. 560. It is enough to prove that the defendant has money of the plaintiff, which in equity and good conscience he ought not to retain. Where, indeed, the defendant is bound by a valid contract (to which the plaintiff is not a party or privy) to pay the money to some one else, the plaintiff cannot prevail, not because privity of contract is essential to this form of action, but because it is essential to that particular case, which has its foundation in a valid contract; or, in other words, because the plaintiff, in that particular case, has failed to show, that, as between the parties, the money is equitably his. The law does not imply a contract to pay A., when the debtor is already bound by a valid contract to pay B. In cases not founded on a direct contract, the inquiry is, not concerning privity of contract, but concerning identity of property.

I have not thought it necessary to consider, in this case, whether Felton was so far the agent of the manufacturing companies that his fraud can be imputed to them, because it appears that his balance of account against each corporation is about equal to the amount of checks which the bank can prove were used for the benefit of the corporation. In this state of the accounts, I am of opinion that the bank can prove the amount of these checks against each company to the extent of its debt to Felton, without showing knowledge of the fraud. The reason is, that to this extent the corporations were not holders for value. All that they ever gave for these checks was an implied promise to repay the amount of them when able, and they never have repaid it, but have always been indebted to Felton by a constantly increasing balance of account. They cannot set up Felton's title to the checks, because that was fraudulent. Their obligation to pay him, must yield as soon as the fraud is shown. In this respect the case is analogous to an asserted title to a chattel derived through a thief. The only difference is, that in the case of money, the defendants may rely on any payment or set-off made or acquired without knowledge of the fraud: Lime Rock Bank v. Plimpton, 17 Pick. 159; Watson v. Russell, 3 Best & S. 40; but this defence is wanting here, as we have seen, to the extent of Felton's balance of account against the companies. Is there, then, such identity shown, such a tracing of the money, as will enable the bank to say that its money has come to the hands of the corporations respectively? I think there is. In those instances in which the officers of the corporation acting in its behalf, drew out the bank-bills upon the fraudulent checks, it is impossible to deny that the bank might instantly have reclaimed those bills, on discovering the fraud, and proving that the corporation gave no value for the checks. And the same result would follow whenever the proceeds of checks were traced to their possession, whether in the identical bills or not: Allanson v. Atkinson, 1 Maule & S. 583; Follett v. Hoppe, 17 Law J. C. P. 76. And in the case of all checks paid directly to the treasurer or superintendent of the company, it would be presumed that they drew them or caused them to be drawn. In those instances in which the checks were paid directly to creditors of the manufacturing companies, it might be somewhat more difficult to say that the money of the bank had come to the hands of the companies themselves. Whether any of these checks are now traced and relied on in this offer of proof, I am not advised. This hearing was merely preliminary, to enable the parties to argue the questions of law; the accounts are now to be settled either by the parties or by an assessor, and when the details are found, my final order will be made, and either party aggrieved thereby can appeal. In settling that account, I should wish that discrimination should be made, if now practicable, between those checks which were paid to the creditors of the companies and to the companies themselves. I do not mean to say that the former cannot be proved; perhaps they may be on the ground that the checks being fraudulent, and the corporations having received full value for them, on the credit of the bank, the latter may allege that its money has gone directly to the corporations, or has been paid to their use.

Order, that it be referred to the register to ascertain the amounts due from each of the corporations respectively upon the basis of this opinion. The claim of Felton's assignee is suspended until the above-mentioned accounts are taken. Either party may apply for further directions at any time.